200    APPELLATE COURTS OF ILLINOIS.

Kretsinger v. Missouri State Life Ins. Co., 243 Ill. App. 200.

Loraine E. Kretsinger et al., Appellees, v. Missouri
State Life Insurance Company, Appellant.

Gen. No. 7,989.

1. INSURANCE—*when policy in force though premium note not paid.*
A life insurance policy, which by its terms would become paid up for
a term of two years after nonpayment of its third annual premium, was
in force when the insured died eight months after such premium be-
came due notwithstanding such premium was paid by giving a premium
lien note for all except a small part thereof and such note was not paid
at maturity, where the insurer did not notify the insured, on the non-
payment of the note, of its election to cancel the policy.

2. INSURANCE—*when not forfeited by nonpayment of loan.* Evi-
dence in an action upon a policy of life insurance held not to show that
the failure of the insured to repay a loan made by the insurer upon
the policy operated as a ·forfeiture of the policy so as to bar recovery
thereon upon the death of the insured.

Appeal by defendant from the Circuit Court of .Christian county;
the Hon. F. R. DOVE, Judge, presiding. Heard in this court at the
April term, 1926. Affirmed. Opinion filed December 29, 1926.

MORTON JOURDAN, F. L. ENGLISH and WALTER M.
PROVINE, for appellant.

LESLIE J. TAYLOR and GUY L. SMITH, for appellees.

MR. JUSTICE NIEHAUS delivered the opinion of the
court.

Irl C. Kretsinger, deceased, in his lifetime on March
11, 1919, took out a life insurance policy in the Mis-
souri State Life Insurance Company, in the sum of
$3,000, of which the appellees, his children Loraine E.
Kretsinger, Bernadine E. Kretsinger and Gwendolyn
L. Kretsinger became the beneficiaries. He died on
November 12, 1922. The company refused to pay the
policy on the ground that the right to recover had
ceased because of the nonpayment of the last two
annual premiums, accruing thereon, which resulted in

bringing this suit in the circuit court of Christian county by the appellees, by T. J. Redfern, their guardian. The appellant company filed the general issue to the declaration, and afterwards gave notice of special defenses which it relied on, namely:

"That the said Irl C. Kretsinger, the insured, mentioned in the declaration, during his lifetime failed to keep, conform and comply with all the terms, provisions and conditions of said policy of insurance upon his part to be kept and performed by the terms thereof; that such default occurred in the failure of said Irl C. Kretsinger to pay the third annual premium due on said policy of life insurance in the amount of $54.90, on or before the 11th day of March, 1922, when the same became due under the terms of said policy, and the said Irl C. Kretsinger failed to pay the said third annual premium within the time limited to a special extension agreement therefor. And the said Irl C. Kretsinger failed to repay to defendant when due a loan made on said policy by the defendant to the said Irl C. Kretsinger in the amount of $48.96, with interest, as provided in the terms of said policy and said loan agreement."

It is apparent that the defenses relied upon by the appellant company to bar the appellees' right of recovery is based on two grounds, First, that he did not pay the third annual premium of $54.90 when the same became due, namely, on the 11th day of March, 1922, nor within the time limited by an alleged special agreement therefor; and secondly, that he failed to repay the appellant company a loan made on the policy in the amount of $48.96 when due, as provided in the terms of the policy and the loan agreement.

A trial by jury of the issues involved resulted in a verdict and judgment for $3,450, the amount of the policy and interest. This appeal is prosecuted from the judgment.

It appears from the record that, while the issues in the case had reference to an alleged failure to pay the third annual premium, much of the evidence introduced and admitted pertained to another controverted question raised on the trial, namely, whether or not the fourth annual premium was paid. The fourth payment under the policy is not directly involved in the issues, and it will not be necessary therefore to consider or determine for the purposes of this opinion whether or not the fourth annual premium was paid.

The evidence clearly shows that the third premium on the policy, which became due March 11, 1921, was paid, and in its brief the appellant company concedes that this premium "was paid by giving a premium lien note (defendant's Exhibit J) in the amount of forty-eight and 96/100 dollars ($48.96), due July 11, 1921, and in addition there was a cash payment made of five and 94/100 dollars ($5.94) to bring the total of fifty-four and 90/100 dollars ($54.90), the amount of the premiums for the year ending March 11, 1922." Under the heading, "This Policy is Non-Forfeitable from Date of Issue," the policy contains the following provisions: "If any premium is not actually paid when due this policy shall cease and determine, except as hereinafter provided. After completion of premium payments for the first two policy years, if any subsequent premium is not paid on the date when due, and remains unpaid during the period of grace, the insured shall, during said period, have the following options: (1) The surrender of the policy for its cash value; (2) The surrender of the policy for a paid-up life policy; (3) If the insured shall not surrender the policy, the insurance will automatically be continued under Option 3." Option 3 is as follows: "3. To let the insurance for the face amount hereof, continue as term insurance, reckoned from the date due of the unpaid premium." And under its "Table of Non-Forfeitable Values," the policy provides that the term of con-

tinued insurance, at the completion of the third policy year, shall be for a period of two years. It is clear from this situation that the "Option 3," in the policy after the payment of the third annual premium, must be considered as having been automatically in force for a period of two years after the due date of the third premium, namely March 11, 1922. The appellant company contends, however, that the premium note given by the deceased, for the third annual premium, was not paid, and that the nonpayment of this note worked a forfeiture of the policy. Concerning this contention, it may be pointed out that the note in question recites on its face: "This Premium Lien Note is given by the undersigned and accepted by said Company in lieu of cash for said premium, and is a lien against said policy and an indebtedness thereon until paid, and is subject to the conditions, stipulations and agreements printed on the back thereof, which are hereby referred to, incorporated in and made a part of this note as fully as if recited over the signatures hereto affixed." One of the stipulations on the back of the note referred to is: "4. If the insured shall not make application for the surrender of the policy at the Home Office of the company within the time allowed and in the manner provided by the terms of said policy, the policy will be continued in accordance with the automatic non-forfeiture provisions, and settlement of this note, unpaid interest, and other indebtedness shall be made in the manner above set forth, unless otherwise provided in said policy.

"5. If this note and unpaid interest is not discharged by the payment thereof in cash or by the surrender of said policy as provided herein, or as provided by the terms of said policy, then whenever the amount of this note and any other indebtedness to the company and any unpaid interest on this note or indebtedness shall equal or exceed the loan value of said policy available on the anniversary date, which was

the beginning of the last completed policy year, or in case a paid-up policy shall equal or exceed the then reserve on said policy, computed according to the table of mortality, and the interest rate provided in or used in computing the legal reserve on said policy, such note and indebtedness shall mature and the lien on said policy shall, thirty-one days after notice has been mailed to the last known address of the insured * * * be deemed to be ipso facto foreclosed, and the amount of the reserve on said policy shall be applied to the discharge of the note and any other indebtedness and any unpaid interest due on said note or other indebtedness, and said note and other indebtedness and said policy shall be automatically cancelled.

"Affidavit of any officer of the company, or of any person having to do with the preparation or mailing of any notice provided for herein or by said policy, that such notice was mailed shall be taken and deemed to be conclusive proof as against any and all persons claiming any interest under said policy of the mailing of such notice at the time and in the manner stated in said affidavit." Assuming that the appellant company had the right under the provisions of the note referred to to cancel the policy for the alleged failure to pay the note when due, it is clear from the record that the appellant company never exercised the right to do so; no notice as provided for to the deceased, as a condition precedent to enforcement of forfeiture or cancellation of the policy, was at any time given. It is contended that the policy was forfeited on account of the alleged nonpayment of a note for part of the fourth annual premium, which was given in connection with an extension agreement made in September, 1922. It will be noted, however, that this extension agreement provides: "That if this note is not paid on or before the day it becomes due it shall thereupon automatically cease to be a claim against the maker,

and the said company shall retain said cash as part compensation for the rights and privileges hereby granted, and as the earned premium for the insurance granted from the maturity of said premium to the maturity of this note, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made.'' That is to say (that if the note given for the part payment of the premium referred to was not paid), the rights of the parties under policy would remain the same as if nothing had been paid and the agreement had not been made. While the question of the nonpayment of the fourth annual premium, and its effect on the rights of the appellees to recover under the policy, was not a matter in issue in the case, as heretofore pointed out, it may be said concerning this contention that if the policy automatically was in force as term insurance for a period of two years from March 11, 1921, as provided in the policy, the nonpayment of the note under the terms of the extension agreement left the policy and the rights of the parties in the same condition as if the note had not been given, and the agreement had not been made, namely, the policy remained in force as term insurance. There is no proof in the record that a failure to repay the appellant company a loan amounting to $48.96 when due, operated as a forfeiture of the policy, or barred the right of recovery. The jury therefore under the evidence in the case properly found the issues for the plaintiff for the amount of the policy and interest thereon, and the record does not disclose any reversible error. The judgment is affirmed.

*Affirmed.*